## Carter Estate

*Arthur C. Thomas*, for accountant.

KLEIN, P. J., November 22, 1961.—By decree of this court, dated May 9, 1956, Annie M. Carter was adjudicated an incompetent, and Eustace Gay was appointed guardian of her estate.

The present account has been filed because of the death on August 8, 1961, of the said Annie M. Carter. Letters of administration on her estate were granted to the said Eustace Gay, the present accountant, on September 14, 1961, the said letters of administration having been submitted to the auditing judge for inspection at this audit.

All parties in interest appear to have received notice of this audit.

The appearance slip of counsel for the accountant requests additional credit for guardian's commissions in the aggregate sum of $625.93, for counsel fee in the sum of $500, and cost of filing guardian's account in the sum of $75, making a total additional credit requested of $1,200.93.

Although the auditing judge is familiar, generally, with the extent of the services rendered by the guard-

ian and his counsel, and the fees and commissions requested seem to be fair and reasonable, he will not pass upon them at this audit, as there appears to have been no necessity for the guardian to have filed the present account.

The Incompetents' Estates Act of June 28, 1951, P. L. 612, repealed a mishmash of confusing and loosely related statutes dealing with the subject of incompetents, going back for more than a century and a quarter to 1836. The new act was long overdue and extremely salutary in nature. It revised and modernized the law to meet the needs of our present-day, complex society and provided for more expeditious administration of the estates of incompetents generally.

Section 612 of the act, dealing with claims against incompetents' estates provided.

"Recognition of Claims—Upon the audit of the account of the guardian of a person who has died during incompetency, the auditing judge or auditor passing on the account shall not pass upon any claims against the estate of the incompetent other than necessary administration expenses, including compensation of the guardian and his attorney. All claims remaining unpaid at the incompetent's death shall be presented to the personal representative."

The comment from the report of the Joint State Government Commission explains clearly the purpose of this section:

"Comment—Section 612 is intended to clarify existing case law which remains in some confusion because of uncertainty as to when the claim should be presented to the guardian and when to the personal representative. Except when distribution can be made under Section 202 of the Fiduciaries Act of 1949, all questions concerning claims, other than those paid by the guardian prior to death and those incurred for

necessary administration expenses, should be presented to the personal representative, for ultimate consideration by the orphans' court."

The Incompetents' Estates Act of 1955, Act of February 28, 1956, P. L. (1955) 1154, 50 PS §310 et seq., is a substantial reenactment of the 1951 Act and was occasioned by the 1955 amendment to the Orphan's Court Act of August 10, 1951, P. L. 1163, which gave the orphans' court exclusive, rather than concurrent, jurisdiction over incompetents' estates.

Section 612 of the 1951 Act, prohibiting the presentation of the claims of general creditors at the audit of the account of the guardian of the estate of a person who has died during incompetency, was reenacted, without change, in section 613 of the 1955 Act. This provision made the filing of a formal account by the guardian unnecessary in most cases, especially if the person who served as guardian was appointed executor or administrator upon the death of the incompetent.

The legislature, upon the urging of the judges of this court and several other orphans' courts of the state, created a procedure in section 631(b) of the 1955 Act which authorizes a guardian of the estate of an incompetent to deliver the assets in his possession to the personal representative upon the incompetent's death without the necessity of a formal accounting. This section reads as follows:

"(b) Account of Personal Representative of Deceased Incompetent. A guardian shall be relieved of liability with respect to all real and personal estate distributed by him to the personal representative of a deceased incompetent and thereafter distributed by the personal representative in conformity with a decree of court, or in accordance with a rule of court upon an accounting of such personal representative and confirmation thereof."

The comment to this section states:

"Comment—This subsection is added with the thought that it may be employed frequently to avoid the duplication of accounting when an incompetent dies. In many such instances the incompetent's guardian files an account, the balance of which is awarded to a personal representative, who in turn subsequently files his accounting. Frequently, the guardian and the personal representative are the same person or institution, and the administration of a deceased incompetent's estate can proceed without any formal accounting as guardian, thus saving substantial expense and inconvenience. In instances when the guardian and the personal representative are not the same, the guardian may agree to assume the responsibilty of a distribution which remains as a risk distribution until the assets are awarded upon the personal representative's accounting. Should question of surcharge of the guardian arise, he may voluntarily file his account or be forced to do so. No question of the rights of creditors or due process is involved, because adequate notice would be given of grant of letters to the personal representative and of his accounting. The suggested procedure seems to be preferable to that followed in Tarbottom Est., 4 Fiduc. Rep. 328, annot. Fiduciary Review, July, 1954."

In the present case, letters of administration were granted to the same person who was guardian of the incompetent's estate, and no practical reason is apparent for the filing of the present account. The accountant should have availed himself of the procedure permitted by the statute and thereby saved the estate from unnecessary expenditures for costs, commissions and counsel fees as was done in Estate of Hazel M. Carr, Deceased, no. 708 of 1959 (O. C., Philadelphia County, not reported), in which the guardian's account was attached to and made part of the administrator's

account. Judge Shoyer in his adjudication stated: "Approval of the instant administrator's account carries with it approval of the guardian's account. Unnecessary duplication of costs involved in the filing and advertising of two separate accounts has thus been avoided and the accountant is to be commended for this saving . . ." See also Ayers Estate, 12 D. & C. 2d 478.

The balance of proceeds of sale of real estate is $6,112.81
less deficit shown in account
   of principal, personalty, 2,291.16

leaving $3,821.65
which, together with the balance of income, $881.88, and together with any further income or interest on deposits, is awarded to Eustace Gay, administrator of the estate of Annie M. Carter, deceased, without prejudice, however, to the rights of Eustace Gay, the guardian, and Arthur C. Thomas, his attorney, to make claim for compensation for their services in connection with the administration of the incompetant's estate at the audit of the administrator's account, when the request will be considered in the light of any additional charges which may be claimed by the administrator and his counsel . . .

And now, November 22, 1961, the account is confirmed nisi.